UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CAPTAIN PAUL RADTKE, *et al.*,

Plaintiffs,

v.

U.S. BUREAU OF CUSTOMS &
BORDER PROTECTION, *et al.*,

Defendants.

Civil Action No. 17-cv-2412 (TSC)

---

**MEMORANDUM OPINION**

Plaintiffs Captain Paul Radtke, Offshore Marine Service Association, and Shipbuilders Council of America have sued the Bureau of Customs and Border Protection ("CBP") and its Acting Commissioner Kevin K. McAleenan. Plaintiffs allege that Defendants have violated the Administrative Procedure Act ("APA") through a string of letter rulings incorrectly interpreting the Jones Act and subsequent decisions not to revoke those letter rulings. ECF No. 1, Compl., ¶¶ 1-2, 5. Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 18 ("Def. MJP"). Plaintiffs opposed and later moved for leave to amend their complaint. ECF No. 35 ("Pl. Mot. for Leave"). For the reasons below, the court will GRANT Plaintiffs' motion for leave to amend and DENY without prejudice Defendants' motion for judgment on the pleadings as moot.

## I.  BACKGROUND

### A. Statutory Scheme

CBP is responsible for interpreting and enforcing Section 27 of the Merchant Marine Act of 1920, commonly known as the Jones Act, 46 U.S.C. § 55102, which governs the

transportation of merchandise between points in the United States—also known as "coastwise transportation."  The Act requires that coastwise transportation be performed only by vessels flagged, owned, built, and crewed by Americans—often termed "Jones Act qualified vessels." *See* 46 U.S.C. § 55102(b).

Pursuant to its general enforcement authority, CBP may issue interpretive "letter rulings" applying the Jones Act prospectively to individual transactions.  *See* 19 U.S.C. §§ 1502, 1625(a); *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001).  Letter rulings are intended to preview for "importers and other interested persons" CBP's view of a transaction before it is undertaken and completed.  19 C.F.R. § 177.1(a)(1).  Generally, CBP only issues a letter ruling when requested by a "person who . . . has a direct and demonstrable interest in the question or questions presented in the ruling request," *id.* § 177.1(c), when the prospective transaction is not "essentially hypothetical in nature," *id.* § 177.7(a), and when issuing a letter ruling would not be "contrary to the sound administration of the Customs and related laws," *id*.  Once issued, however, a letter ruling constitutes CBP's "official position" on "the particular transaction or issue described therein and is binding on all Customs Service personnel."  *Id.* § 177.9(a).

By law, CBP must publish a letter ruling within 90 days of its issuance.  19 U.S.C. § 1625(a).  Any "person may appeal an adverse interpretive ruling . . . to a higher level of authority within the Customs Service for de novo review," and CBP must decide the appeal within 60 days.  *Id.* § 1625(b).

While CBP may issue letter rulings without adversarial proceedings or notice and comment, the Jones Act imposes special procedures for changing the rulings.  If CBP proposes an interpretive rule or decision that would "(1) modify . . . or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or (2) "have the effect of modifying the

treatment previously accorded by the Customs Service to substantially identical transactions,"

CBP must provide a notice and comment period. *Id.* § 1625(c). "After consideration of any

comments received," CBP must "publish a final ruling or decision" no later than 30 days after

the close of the notice and comment period. *Id.*

**B.**   **Plaintiffs' Administrative Challenges**

Plaintiffs are two associations—the Offshore Marine Service Association (OMSA) and

Shipbuilders Council of America (SCA)—and Captain Paul Radtke, who holds a U.S. Coast

Guard vessel operating license. Compl. ¶¶ 6-8. Plaintiffs or their members build, own, or

operate Jones Act qualified vessels. *Id.* Plaintiffs identify three ways in which CBP violated the

APA and caused them actionable harm.

First, Plaintiffs challenge CBP's issuance of and failure to revoke twenty-five letter

rulings dating as far back as 1976. They claim these letter rulings collectively departed from the

Jones Act's requirements by "permitting foreign vessels to transport merchandise between U.S.

points if they *also* engage in ancillary activities that are not regulated by the Jones Act," *id.*

¶¶ 33-35, and "improperly narrow[ing] the definition of 'merchandise' that must be transported

by Jones Act," *id.* ¶¶ 36-41. In 2009, and again in 2017, CBP initiated § 1625(c) proceedings

that proposed to revoke or modify some or all the allegedly unlawful letter rulings. *Id.* ¶¶ 43-44,

50-63. In both instances, however, CBP ultimately decided to withdraw those proposals and

make no changes after the close of the notice and comment periods. *Id.* ¶¶ 45, 66. After CBP

withdrew the proposals in 2017, OMSA sent a letter to Kevin K. McAleenan purporting to

"appeal, pursuant to 19 U.S.C. § 1625(b)," that decision. *Id.* ¶ 68; *id.* Exh. E, ECF No. 1-5, at 1-

2. Plaintiffs contend that CBP never responded to the letter. *Id.* ¶ 69. Accordingly, the

Complaint asserts that the twenty-five letter rulings, as well as CBP's 2017 decision not to

revoke them and failure to respond to OMSA's appeal, were all "arbitrary, capricious, and abuses of discretion, and contrary to law." *Id.* ¶ 84.

Second, Plaintiffs object to CBP's denial of OMSA's request for a letter ruling concerning decommissioning activities. An oil rig operator can abandon an offshore well in a process called decommissioning, during which the operator will often use vessels to remove any remaining installations or facilities before plugging the well. Compl. ¶¶ 86-87. In early 2016, OMSA sought a letter ruling confirming that the Jones Act governed foreign vessels transporting merchandise for decommissioning activities. *Id.* ¶ 89. CBP denied OMSA's request, stating that it was "hypothetical." *Id.* ¶ 90. The next year, OMSA purported to "appeal, pursuant to 19 U.S.C. § 1625(b)," that denial along with the 2017 withdrawal. *Id.* ¶ 91; *id.* Exh. E, ECF No. 1-5, at 1-2. The Complaint contends that both CBP's denial of the request for a letter ruling, as well as its failure to respond to the appeal letter, are "arbitrary, capricious, an abuse of discretion, and contrary to law." *Id.* ¶¶ 92-93.

Finally, Plaintiffs take issue with a 2012 letter ruling regarding the transportation of "nodes"—devices for measuring seismic data on the Outer Continental Shelf. In that letter ruling, CBP determined that if a foreign vessel transporting nodes qualified under the foreign country's laws as an "oceanographic research vessel," then the requirements of the Jones Act did not apply. *Id.* ¶¶ 97, 100. That determination, the Complaint alleges, contravenes the Jones Act when read in conjunction with the Oceanographic Research Vessel Act, 46 U.S.C. § 2101, and the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333, and therefore is also "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Compl. ¶ 103-04.

Plaintiffs claim that CBP's letter rulings "allow[] foreign-flagged vessels to continue to perform substantial amounts of work in the Gulf of Mexico"—work that otherwise "would be

handled by U.S.-flagged vessels and U.S. mariners." *Id.* ¶ 70.  In the absence of those letter

rulings, therefore, Plaintiffs "would be able to obtain contracts to handle the work performed by

these foreign-flagged vessels," which they are "capable of handling" but often "do not receive"

under CBP's current regime.  *Id.* ¶¶ 77-78.  Plaintiffs assert a similar harm for U.S. shipbuilders

and mariners like Captain Radtke, who suffer from the reduced demand for their services caused

by CBP's letter rulings permitting their replacement by foreign entities.  *Id.* ¶¶ 79-80.  These

harms would be remedied, they argue, if the court granted them the relief they seek: a declaration

that CBP violated the APA and an order that CBP implement Plaintiffs' reading of the Jones Act

by revoking or issuing letter rulings as necessary.  *Id.* at 31.

**C.  Procedural History**

   After CBP filed an answer, ECF No. 10, the court permitted American Petroleum

Institute to intervene as a defendant, 4/3/2018 Minute Order.  Defendants then moved for

judgment on the pleadings, asserting that the Complaint should be dismissed because the court

lacks jurisdiction, Plaintiffs lack standing, the first claim is not ripe, all three claims are moot, the

first and third claims are not justiciable, the 2017 withdrawal was not a final agency action, the

first claim is barred by the statute of limitations, all of CBP's challenged actions are

discretionary and therefore unreviewable, and OMSA never brought a valid appeal under Section

1625(b).  Def. MJP at 9-32.  In addition, American Petroleum Institute contends that the 2017

withdrawal was legally required because the proposed modifications did not comply with

Executive Order 13,771.  Def. MJP at 33.

   While Defendants' motion was pending, CBP again issued a Section 1625(c) proposal to

modify or revoke some of the challenged letter rulings.  *See* Pl. Mot. for Leave, Exh. 17, ECF

No. 35-18.  The proposal was open for a 30-day comment period in late 2019.  After considering

the comments—including comments from OMSA, *id.* Exh. 18, ECF No. 35-19—CBP published

a final decision that modified eight letter rulings and revoked five others, *id.* Exh. 19, ECF No.

35-20.  In doing so, CBP revoked five of the twenty-five letters underlying Plaintiffs' first claim,

but left the rest in place and made some other changes to which Plaintiffs objected.  Mot. for

Leave at 5-6.  Once again, Plaintiffs sent a letter to CBP purporting to appeal the 2019 decision

under §1625(b).  *Id.* at 9.  CBP replied that it did not consider that letter to be a valid appeal.  *Id.*

Exh. A, First Amended Complaint ("Am. Compl."), ECF No. 35-1, Exh. 23.

Two months later, Plaintiffs moved for leave to file an amended complaint.  Among other

changes, the proposed amendments expand the complaint's discussion of the Jones Act and

CBP's letter rulings, provide additional information on the effects that CBP's actions have had

on Plaintiffs, and update the claims to reflect the modifications and revocations of letter rulings

that CBP made in its 2019 decision.  *See* Am. Compl.[1]  Defendants oppose the motion.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 15 directs courts to "freely give leave" to amend a

complaint "when justice so requires."  "If the underlying facts or circumstances relied upon by a

plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim

on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Granting leave to amend is therefore

appropriate "[i]n the absence of any apparent or declared reason" to deny it, "such as undue

---

[1] The parties dispute whether the latter change is an "amendment" or "supplement" to the
pleadings under the Federal Rules of Civil Procedure.  *Compare* ECF No. 40, at 2-3 ("Opp. to
Mot. for Leave"), *with* ECF No. 41, at 4-5 ("Reply for Mot. for Leave").  "Inasmuch as the
discretion exercised by the court in deciding whether to grant leave to amend is similar to that
exercised on a motion for leave to file a supplemental pleading, . . . the formal distinction
between amendment and supplementation is of no consequence."  6A Charles Alan Wright, *et
al.*, Federal Practice & Procedure § 1504 (3d ed. 2020).  *See, e.g.*, *Thorp v. D.C.*, 325 F.R.D.
510, 513 (D.D.C. 2018); *see also Wildearth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 23
(D.D.C. 2008).

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc." *Id.* A defendant "bears the burden" of

demonstrating that leave should be denied. *Council on Am.-Islamic Rels. Action Network, Inc. v.

Gaubatz*, 891 F. Supp. 2d 13, 31 (D.D.C. 2012). A court "should not deny leave to amend based

solely on time elapsed between the filing of the complaint and the request for leave to amend."

*Appalachian Voices v. Chu*, 262 F.R.D. 24, 27 (D.D.C. 2009) (citing *Atchinson v. District of

Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996)). Rather, the court should consider whether the

delay is "undue" by "tak[ing] into account the actions of other parties and the possibility of any

resulting prejudice." *Atchinson*, 73 F.3d at 426 (citing *Sinclair v. Kleindienst*, 645 F.2d 1080,

1085 (D.C. Cir. 1981)).

The standard for reviewing a Rule 12(c) motion for judgment on the pleadings

"essentially mirrors" the standard for a 12(b)(6) motion to dismiss. *Tapp v. Washington Metro.

Area Transit Auth.*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016). "[T]he moving party must show

that no material issue of fact remains to be solved and that it is entitled to judgment as a matter of

law." *Jud. Watch, Inc. v. U.S. Dep't of Energy*, 888 F. Supp. 2d 189, 191 (D.D.C. 2012) (citation

omitted). The court presumes the truth of a plaintiff's factual allegations and construes the

complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be

derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)

(internal quotation marks omitted). "Because a Rule 12(c) motion would summarily extinguish

litigation at the threshold and foreclose the opportunity for discovery and factual presentation,

the Court must treat [such a] motion with the greatest of care and deny it if there are allegations

in the complaint which, if proved, would provide a basis for recovery." *Baumann v. District of*

*Columbia*, 744 F. Supp. 2d 216, 221 (D.D.C. 2010) (internal citation and quotation marks

omitted).  Courts are generally "unwilling to grant a judgment under Rule 12(c) unless it is clear

that the merits of the controversy can be fairly and fully decided in this summary manner."

*Tapp*, 306 F. Supp. 3d at 391 (citing 5C Charles Alan Wright & Arthur R. Miller, Fed. Practice

& Procedure § 1369 (3d ed. 2004)).

### III.   ANALYSIS

Because the filing of an amended complaint would moot Defendants' Motion for

Judgment on the Pleadings, the court first considers Plaintiffs' Motion for Leave to File an

Amended Complaint, which Defendants oppose on the grounds that it is unduly delayed and

futile.

### A.  Undue delay

Plaintiffs' motion is not unduly delayed.  That conclusion "take[s] into account the

actions of other parties and the possibility of any resulting prejudice."  *Atchinson*, 73 F.3d at 426.

Plaintiffs timely seek leave to amend in light of the intervening events since their original

complaint.  Their motion came in the immediate aftermath of CBP's 2019 decision, which

involved relevant developments affecting both the facts and the claims in this case:  CBP

revoked several of the letter rulings challenged in Plaintiffs' original complaint, and made

several other related modifications that Plaintiffs attempted to appeal and now seek to challenge.

*See* Am. Compl. ¶¶ 6, 62-69, 83-90, 189, 191.  This is not a case "[w]here the party seeking

amendment knows or should know of the facts upon which the proposed amendment is based but

fails to include them in the original complaint."  *Onyewuchi v. Gonzalez*, 267 F.R.D. 417

(D.D.C. 2010) (citing *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir.

2000)).  Plaintiffs could not have foreseen the 2019 decision or the changes it would bring to

their APA challenges when they filed their original complaint.  It is entirely reasonable for them

to seek to amend the complaint to reflect those developments.  *See, e.g.*, *Hartford Ins. Co. v. Socialist People's Libyan Arab Jamahirya*, 422 F. Supp. 2d 203, 206-207 (D.D.C. 2006); *Brodetski v. Duffey*, 141 F. Supp. 2d 35, 41 (D.D.C. 2001); *Armstrong v. Bush*, 807 F. Supp. 816, 819 (D.D.C. 1992).  Granting leave is "especially favored" where, as here, the amendments "do not radically alter the scope and nature of the action."  *Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 54 (D.D.C. 2019) (citation omitted).

Defendants insist, however, that Plaintiffs' motion will cause undue delay.  They observe that their Motion for Judgment on the Pleadings is "ripe for resolution," and that granting leave to amend will "necessitate yet another round of briefing based on a different administrative record."  Opp. to Mot. for Leave at 9 (quoting *Clean Water Action v. Pruitt,* 315 F. Supp. 3d 72, 84 (D.D.C. 2018).  The result, Defendants argue, will be an unnecessary drain on both the court's resources as well as their own, and a prolonged "cloud of uncertainty" for market participants while this litigation continues.  *Id.* at 8-10.

Defendants mistake the nature of prejudice, which is not simply an adverse result, but an adverse result that would not occur but for the action at issue—*i.e.*, "by virtue of allowance of the amendment."  *Foman*, 371 U.S. at 182.  *See, e.g.*, *In re Sunrise Sr. Living, Inc. Derivative Litig.*, 550 F. Supp. 2d 1, 6 (D.D.C. 2008) (finding no prejudice where, if leave to amend a complaint were denied, the same results were likely to occur via other procedural avenues).  Here, should the court deny Plaintiffs' leave to amend, they could file "a new action seeking review of the 2019 [CBP] Decision."  Reply for Mot. for Leave at 16.  Addressing that new action would not only entail an equal cost to Defendants and the court—indeed, perhaps a greater cost, given that it would involve an entirely separate complaint, answer, and briefing—but it would also further delay the ultimate resolution of Plaintiffs' claims, stretching the "cloud of

uncertainty" for market participants even longer. *Id*. Granting leave to file will therefore not result in prejudice or judicial inefficiency constituting undue delay. It may even "simplify and possibly obviate" rather than "complicate or prolong" further litigation of these issues. *In re Sunrise Sr. Living, Inc. Derivative Litig.*, 550 F. Supp. 2d at 6.

Defendants also take aim at Plaintiffs' proposed amendments that are not directly related to CBP's 2019 decision. In their view, these are nothing more than an "eleventh-hour attempt to bolster the[] Complaint with allegations" Plaintiffs could have made from the outset. Opp. to Mot. for Leave at 4. Although late-breaking amendments adding information long known to Plaintiffs can be a sign of undue delay, these amendments suggest no dilatory motive. Despite the time that has passed since the Complaint was filed and the intervening changes in agency policy, this case remains in relative infancy, at the pleading stage. Unlike Defendants' counterparts in the cases upon which they rely—which involved amendments proposed after discovery or trial preparation—here, Defendants retain full opportunity to develop facts and evidence in their defense. *See* Opp. to Mot. for Leave at 5. And nothing about Plaintiffs' proposed amendments demonstrates bad faith delay. Given that Plaintiffs had legitimate cause to amend certain aspects of their Complaint because of CBP's 2019 decision, their choice to simultaneously "fine-tune" other aspects of their claims does not unduly delay the suit or evince an intent to do so. *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 326 (D.D.C. 2011). "If anything, these amendments should benefit the . . . Defendants by providing them with greater notice of what Plaintiffs' claims are and the grounds upon which they rest." *Id.*

B. **Futility**

Plaintiffs' motion should not be denied as futile, either. "A district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive

a motion to dismiss." *In re InterBank Funding Corp. Sec. Litig.,* 629 F.3d 213, 215 (D.C. Cir. 2010) (citation omitted).  In Defendants' view, the amended pleadings are so "marred" by "the same justiciability and other problems as their original claims" that they are not even worth alleging.  Opp. to Mot. for Leave at 12.  The court is not so certain.

Plaintiffs' proposed amendments raise questions about the defenses that Defendants assert in their Motion for Judgment on the Pleadings.  For example, Defendants argue that Plaintiffs lack standing because they failed to allege "how any particular member of plaintiffs' associations had the appropriate vessel available to do the project work, or was 'in direct competition' to build a vessel, at the relevant time."  Def. MJP at 15; *see id.* at 12-17 (quoting *Horizon Lines, LLC. v. United States*, 414 F. Supp. 2d 46, 53 (D.D.C. 2006)).  But the proposed amended complaint expands on Plaintiffs' allegations of the competitive harm they have suffered, including on some of the very points Defendants argue are deficient.  Am. Compl. ¶¶ 145-85.  Likewise, Defendants argued in their motion for judgment on the pleadings that judicial review of CBP's 2017 withdrawal is inappropriate because CBP did not ultimately state a definitive position or change any of its letter rulings or other policies.  Def. MJP at 17-19, 20-21, 22-24.  Plaintiffs' amended complaint alleges that CBP's 2019 decision did both.  Am. Compl. ¶¶ 6, 62-69, 83-90, 189, 191.  At the very least, then, the proposed amended complaint addresses important issues of justiciability and APA reviewability that Defendants assert in their defenses.

Moreover, granting leave to amend would have few if any drawbacks even given Defendants' position that amendment would be futile.  Plaintiffs would have a chance to present their updated and sharpened claims.  Defendants could hone their defenses accordingly and save themselves the trouble of defending another separate lawsuit.  If the amended complaint suffers

from the same defects as the original, then it would cost Defendants little to file a renewed and

largely unchanged motion for judgment on the pleadings.  And the court will not have to

speculate as to the parties' potential arguments on the amended pleadings before ruling on a

dispositive motion, but can instead rest its decision on briefing directly addressed to the amended

complaint.

"Without concluding whether Plaintiffs' proposed amended complaint will ultimately

survive a [renewed motion for judgment on the pleadings], the [c]ourt cannot find—at this

stage—that granting Plaintiffs leave to file a first amended complaint would be futile." *Hourani*

*v. Mirtchev*, 282 F.R.D. 278, 280 (D.D.C. 2012).  What is more, permitting the amended

pleadings will aid the parties and the court in resolving the merits of the defenses raised here.  As

a result, the court concludes that granting leave is the appropriate exercise of its discretion under

Rule 15.  *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) ("[I]t is an abuse

of discretion to deny leave to amend unless there is sufficient reason.").

## IV.   CONCLUSION

For these reasons, the court will GRANT Plaintiffs' Motion for Leave to File First

Amended Complaint, ECF No. 35, and DENY without prejudice Defendants' Motion for

Judgment on the Pleadings, ECF No. 18, as moot.


Date: November 14, 2022

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge