**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAPTAIN PAUL RADTKE, OFFSHORE MARINE SERVICE ASSOCIATION, and SHIPBUILDERS COUNCIL OF AMERICA, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES CUSTOMS AND BORDER PROTECTION, AN AGENCY OF THE DEPARTMENT OF HOMELAND SECURITY, and TROY MILLER, in his official capacity as Acting Commissioner of U.S. Customs and Border Protection, | ) ) ) ) ) ) ) ) | Civil Action No. 17-2412 (TSC) |
| Defendants, | ) ) ) | |
| and | ) ) | |
| AMERICAN PETROLEUM INSTITUTE, | ) ) | |
| Intervenor Defendant. | ) ) | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

# <u>TABLE OF CONTENTS</u>

Table of Contents ................................................................................................................. i

Table of Authorities ........................................................................................................... ii

Introduction ........................................................................................................................ 1

Argument ............................................................................................................................ 2

    I.    Plaintiffs' Response makes clear that they are seeking an advisory opinion rather than resolution of a particular case or controversy—the Court has no jurisdiction to entertain Plaintiffs' claims. ................................................................................................... 2

        A.    CBP publishes letter rulings to address particular transactions, not general issues. .... 2

        B.    Plaintiffs' generalized complaint about CBP's effect on the market differs from a competitor's specific complaint about a particular transaction. ........................................... 5

        C.    Plaintiffs' claims are not ripe because they have not sought a CBP letter ruling on transactions involving their members. ................................................................................. 11

    II.    The applicable statute of limitations runs from the time a cause of action *first* accrues—it does not toll for alleged continuing harms as Plaintiffs suggest.  The statute of limitations therefore also bars the bulk of Plaintiffs' claims. .................................................................... 12

    III.    It would be futile to permit Plaintiffs to amend their Complaint yet again. .................. 14

Conclusion ....................................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arnoldi v. Bd. of Trs., Nat'l Gallery of Art,*
    557 F. Supp. 3d 105 (D.D.C. 2021), *aff'd*, No. 21-5182, 2022 WL 625721
    (D.C. Cir. Mar. 1, 2022)..................................................................................13

*Functional Music, Inc. v. FCC,*
    274 F.2d 543 (D.C. Cir. 1958) ........................................................................13

*Hallissey v. Am. Online, Inc.,*
    No. 99-CIV-3785, 2009 WL 2222739 (S.D.N.Y. July 15, 2009)....................15

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries,*
    238 F. Supp. 2d 174 (D.D.C. 2001)................................................................14

*Horizon Lines, LLC v. United States,*
    414 F. Supp. 2d 46 (D.D.C. 2006)............................................................4, 7, 8

*Justice v. Koskinen,*
    672 F. App'x 6 (D.C. Cir. 2016).....................................................................13

*Kloosterboer Int'l Forwarding LLC v. United States,*
    604 F. Supp. 3d 853 (D. Alaska 2022) ........................................................9, 10

*Miss. Ass'n of Cooperatives v. Farmers Home Admin.,*
    139 F.R.D. 542 (D.D.C. 1991).......................................................................15

*Murphy Expl. & Prod. Co. v. U.S. Dep't of Interior,*
    270 F.3d 957 (D.C. Cir. 2001)........................................................................12

*Mwani v. Al Qaeda,*
    600 F. Supp. 3d 36 (D.D.C. 2022)..................................................................15

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
    538 U.S. 803 (2003)........................................................................................11

*NLRB Union v. Fed. Labor Rels. Auth.,*
    834 F.2d 191 (D.C. Cir. 1987)........................................................................12

*Shipbuilders Council of America v. United States,*
    868 F.2d 452 (D.C. Cir. 1989)....................................................................8, 13

*White v. Wash. Metro. Area Transit Auth.,*
    303 F. Supp. 3d 5 (D.D.C. 2018)....................................................................15

*Xenophan Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC,*
    268 F. Supp. 3d 61 (D.D.C. 2017) ........................................................14

**Statutes**

19 U.S.C. § 1625 ...............................................................................4, 5, 13

19 U.S.C. § 1625(c) .....................................................................................2

19 U.S.C. § 1625(c)(1) .................................................................................4

19 U.S.C. § 1625(c)(2) ............................................................................4, 13

28 U.S.C. § 2401(a) ...............................................................................11, 12

**Other Authorities**

19 C.F.R. § 177.1 .......................................................................................13

19 C.F.R. § 177.1(a)(1) ............................................................................2, 5

19 C.F.R. § 177.2(b)(1) .............................................................................6, 7

19 C.F.R. § 177.2(b)(2)(B)(iv) ....................................................................7

19 C.F.R. § 177.9 ......................................................................................13

19 C.F.R. § 177.9(a) ...................................................................................3

19 C.F.R. § 177.9(b) ...................................................................................3

19 C.F.R. § 177.9(b)(4) ....................................................................1, 3, 4, 7

19 C.F.R. § 177.9(c) ...................................................................................3

19 C.F.R. § 177.12 ................................................................................4, 13

19 C.F.R. § 177.12(b) .................................................................................4

19 C.F.R. § 177.12(c)(1)(ii) .........................................................................4

U.S. Const. art. III .............................................................................. *passim*

## INTRODUCTION

Plaintiffs Radtke, Offshore Marine Service Association, and Shipbuilders Council of America still cannot point to a concrete injury, fairly traceable to Customs and Border Protection ("CBP"), and redressable by this Court.  Their allegations fail because they misstate the core nature of CBP letter rulings.  CBP issues letter rulings to address particular transactions, not to decide general "issues."   Letter rulings govern and are "applied only with respect to *transactions* involving operations *identical to* those set forth in the ruling letter."  19 C.F.R. § 177.9(b)(4) (emphases added).  Thus, the withdrawal or putative withdrawal of a letter ruling likewise impacts only the particular transaction or "identical" transactions.  *Id.*

CBP regulations instruct market participants not to generally rely on prior letter rulings as decisions of "issues."  Regulated entities should instead seek a new letter ruling particular to their transaction.  Plaintiffs skipped that critical step.  They did not ask CBP for a letter ruling on a transaction involving one of their members (and they did not contemporaneously challenge any rulings issued to a third person).  And Plaintiffs do not plead facts establishing that one or more members engaged or sought to engage in "identical" transactions to those described in the challenged letter rulings.  Vacating the challenged letter rulings, either directly or indirectly by vacating the 2019 Decision, would not redress the injuries Plaintiffs allege.  Plaintiffs do not present a case or controversy to the Court but instead seek an advisory opinion on pure "issues" of law.  Article III does not permit this.

Nor does the applicable statute of limitations permit tardy challenges to old rulings on old transactions.  For the reasons set forth below and in Defendants' Memorandum in Support of Defendants' Motion for Judgment on the Pleadings, the Court should dismiss Plaintiffs' Amended Complaint.  And it should do so without subjecting Defendants—or the Court itself—to the unnecessary expense of litigating unsalvageable claims.

1

**ARGUMENT**

I.  **Plaintiffs' Response makes clear that they are seeking an advisory opinion rather than resolution of a particular case or controversy—the Court has no jurisdiction to entertain Plaintiffs' claims.**

In responding to Defendants' ripeness challenge, Plaintiffs inadvertently admit the central defect of their claims: they ask the Court for an advisory opinion on issues of law untethered from any particular case or controversy that injures them.  Plaintiffs assert that "[t]he issues here involve a purely legal question with no need for any further factual development or additional agency action: whether the CBP letter rulings currently in force conflict with the Jones Act."  ECF. No. 61, Pls.' Mem. Of P&A in Opp'n to Mot. for J. on the Pleadings at 34 (May 4, 2023) ("Opp'n").  But because Plaintiffs are not subject to any "currently in force" letter ruling, this Court lacks jurisdiction under Article III.  The Court cannot issue the advisory opinion that Plaintiffs seek.

The core defect in Plaintiffs' claims derives—at least in part—from their mischaracterization of CBP letter rulings.  CBP publishes letter rulings to address particular transactions, not general issues.  Plaintiffs' reliance on competitor standing caselaw therefore misses the point.  Plaintiffs' claims fail because they ask the Court to change how CBP approaches certain "issues" going forward rather than change the treatment of any particular past transaction (or "identical" transaction) in a letter ruling.  Plaintiffs therefore do not present the Court with a justiciable case or controversy.  They seek an advisory opinion.

A.  **CBP publishes letter rulings to address particular transactions, not general issues.**

Plaintiffs incorrectly assert that "once CBP issues a letter ruling *on a particular issue*, it is statutorily bound to adhere to that position in future letter rulings . . . ."  Opp'n 4 (citing 19 U.S.C. § 1625(c)) (emphasis added); *accord id.* 11–12.  CBP's regulations state that its letter rulings interpret the law and facts "with respect to *a specifically described transaction*."  19 C.F.R.

§ 177.1(a)(1) (emphasis added).  But CBP's letter rulings do not resolve "issues" generally.  They address particular transactions.

Plaintiffs' mistake comes from reading only a portion of the applicable regulation. Plaintiffs rely on 19 C.F.R. § 177.9(a)'s statement that a CBP letter ruling "represents the official position of the Customs Service with respect to the particular transaction or issue described therein and is binding on all Customs Service personnel in accordance with the provisions of this section until modified or revoked." *See* Opp'n 3 (quoting 19 C.F.R. § 177.9(a)), 13 (same).  But Plaintiffs need to read on.  Proceeding to subsection (b), the regulation elaborates on the "[a]pplication of rulings to transactions."  Subsection (b)(4) states that for "[c]arrier rulings"—which are specifically at issue here—"[e]ach ruling letter setting forth the applicability of the navigation laws to a vessel will be applied only with respect to ***transactions*** involving operations ***identical to*** those set forth in the ruling letter."  19 C.F.R. § 177.9(b)(4) (emphases added).

Letter rulings thus "bind" CBP only "with respect to any ***transaction identical to the facts and circumstances*** described in the ruling request."  *Id.* (emphasis added).  It is simply incorrect to say that past CBP letter rulings bind CBP to a position on an "issue"—past CBP letter rulings bind CBP only with respect to ***identical transactions***.  *Id.*; *see also* ECF No. 59-1, Mem. of P&A in Supp. of Defs.' Mot. for J. on the Pleadings at 18–19 (Mar. 20, 2023) ("Mot.").  Hence, applicants may cite past letter rulings "as authority in the disposition of ***transactions*** involving ***the same circumstances***."  19 C.F.R. § 177.9(a) (emphases added).  But parties may not rely on past letter rulings as general statements of law or policy.  CBP regulations state in no uncertain terms: "no other person should rely on the ruling letter or assume that the principles of that ruling will be applied in connection with any transaction other than the one described in the letter."  *Id.* § 177.9(c).

3

Contrary to Plaintiffs' argument, § 1625's notice-and-comment procedures do not confer general precedential effect on CBP letter rulings. Rather, § 1625 confirms the transaction-specific nature of CBP letter rulings and CBP's appropriate implementation of its authority. It requires CBP to publish notice and solicit public comment only when its proposed action would deviate from its interpretation in a letter ruling of "***identical***" transactions or "treatment" of "***substantially identical transactions***." 19 U.S.C. § 1625(c)(1), (c)(2) (emphasis added); 19 C.F.R. § 177.12 (emphasis added). CBP does not have to go through the notice-and-comment process when a subsequent letter ruling is distinguishable. 19 U.S.C. § 1625(c)(1), (c)(2); 19 C.F.R. § 177.12. And CBP must assess on a "case-by-case" basis whether a particular transaction is "***identical***" to a transaction previously treated by a CBP carrier letter ruling or "***substantially identical***" to a previous "treatment." 19 C.F.R. § 177.12(b), (c)(1)(ii); *see also id.* § 177.9(b)(4). While the Plaintiffs are stuck on challenging general "issues" of "pure law," the statute and regulations are instead about particular "identical transactions."

Now having had two chances to plead their complaint, Plaintiffs did not come forward and identify any transactions that were "identical" to those in the challenged letter rulings and that Plaintiffs or their members were considering or competing for. Instead, Plaintiffs challenge thirty letter rulings writ large without describing a particular identical transaction. Mot. 7–9 (listing challenged letter rulings). Because letter rulings are transaction-specific, Plaintiffs should have initiated or intervened in a letter-ruling request for a transaction involving one of their members— that would at least have given them a starting point for presenting a case or controversy to the Court. *Cf.* Complaint, *Great Lakes Dredge & Dock Co., LLC v. Magnus*, No. 4:22-CV-02481 (S.D. Tex. Aug. 26, 2022) (challenging a CBP letter ruling on a wind-farm transaction allegedly involving plaintiff's vessel) ("*Great Lakes* Complaint"); *Horizon Lines, LLC v. United States*, 414

F. Supp. 2d 46, 49 (D.D.C. 2006) (challenging CBP letter ruling in favor of a competitor to a particular transaction after intervening in letter-ruling proceedings).  And contrary to Plaintiffs' assertion, Jones Act shippers can request letter rulings on live, prospective transactions.  *Compare* Great Lakes Complaint (Jones Act Shipper requested letter ruling on a transaction that it represented it would participate in), *with* Opp'n 35.

But Plaintiffs did not even take that minimal first step toward standing.  Instead, they skipped CBP entirely on the false premise that CBP determines "issues."  CBP provides the public notice so that those who truly are pursing "identical transactions" have an opportunity to comment before letter rulings are modified or rescinded.  That process does not dispose of the "identical transactions" requirement, and it certainly does not give the public writ large an injury-in-fact, fairly traceable, and redressable by legal challenge to each and every letter ruling.  Because Plaintiffs do not plead transactions "identical" to any of the challenged rulings, they ask the Court for an advisory opinion to direct CBP to resolve those "issues" differently in the future.  That is not how CBP's transaction-specific letter rulings work.[1]  And that is certainly not how Article III works.

### B.  Plaintiffs' generalized complaint about CBP's effect on the market differs from a competitor's specific complaint about a particular transaction.

Plaintiffs attempt to salvage their standing by emphasizing the competitive harms allegedly imposed on their members, and they rely on "competitor standing" to support that theory of harm.  The notion of "competitor standing," however, offers Plaintiffs no recourse.  Plaintiffs do not allege even one instance in which a CBP letter ruling on a particular transaction exposed Plaintiffs'

---

[1] 19 U.S.C. § 1625 ("substantially identical transactions"); 19 C.F.R. §§ 177.1(a)(1) ("specifically described transaction"), 177.9(a) ("transactions involving the same circumstances"), 177.9(b)(4) ("transactions involving operations identical to those set forth in the ruling letter" and "identical transaction"), 177.12 ("substantially identical").

members to unlawful competition.  Instead, Plaintiffs revert to their generalized grievance that their members "have operated in a market in which the challenged rulings have permitted illegal competition."  Opp'n 34.

Plaintiffs state that they "identified specific transactions that OMSA members observed being performed by foreign-flagged vessels on the [outer continental shelf] in violation of the Jones Act and cited specific instances in which OMSA members have been passed over for contracts in favor of foreign-flagged vessels in violation of the Jones Act."  *Id.* 29.  They give two examples:

> One OMSA member (Hornbeck) noted, "[d]ays after CBP decided to withdraw [its] notice without revoking the unlawful letter rulings," it "was advised that the client had decided to hire a foreign vessel instead."  [Am. Compl.] at ¶ 153.
>
> OMSA members Candy Fleet, L.L.C, Nautical Solutions, and Otto Candies, LLC describe how they were "passed over for contracts related to the construction and maintenance of offshore facilities as a result of CBP's unlawful letter rulings and interpretative guidance."  *Id.* at ¶ 156; *see also id.* Exs. 31, 32, 37 (declarations).

*Id.* 26.  But Plaintiffs do not connect these two "specific" examples to any CBP letter ruling. Plaintiffs do not allege that they, their members, or anyone else sought letter rulings in advance of any of these transactions.  Am. Compl. ¶¶ 153–62.  They also omit key details about these transactions from their allegations: for example, where the offshore work occurred, whether they offered a vessel that was technically qualified, whether the vessel was available to meet project requirements in a timely manner, and whether the customer had other options for performing the work such that the Jones Act did not even apply (such as transporting materials from Mexico).  *Id.* For example, in the Hornbeck instance, Plaintiffs give no substantive detail about the transaction beyond the fact that it was "a contract to perform offshore transport operations."  *Id.* ¶ 153.

Critically, these are exactly the sort of details that CBP's regulations *require* from those making "[e]ach request for a ruling."  19 C.F.R. § 177.2(b)(1).  The request "must contain a

complete statement of all relevant facts relating to the transaction," including "the names, addresses, and other identifying information of all interested parties (if known); the port or place at which any article involved in the transaction will arrive or be entered," and "a description of the transaction itself, appropriate in detail to the type of ruling requested." *Id.* "If the transaction involves a vessel, the request for a ruling should include," *inter alia*, "the place of build and nationality of registration" and "the exact place or places of intended use, if known." *Id.* § 177.2(b)(2)(B)(iv). And, where, as here, "the request for a ruling involves a determination as to whether or not the primary object of a contemplate voyage would be considered to be coastwise transportation":

> The request should completely identify the voyage, including the proposed time of arrival at and departure from every port on the itinerary and any coordination of the voyage with special events at coastwise ports, and should be accompanied by samples, if available, of brochures, advertising, and other information that may be relevant to a determination of the primary object of the proposed voyage.

*Id.*

Plaintiffs' vague allegations fall far short of any commensurate detail for any transactions that they or their members sought to engage in or compete for. They do not even allege enough facts to determine whether the alleged transactions even implicated the Jones Act at all. *See* Am. Compl. ¶¶ 153–62. They certainly do not allege facts sufficient to show that those transactions were "identical" to the transactions underlying any of the thirty challenged letter rulings and so putatively affected by them. *See* 19 C.F.R. § 177.9(b)(4) ("Each ruling letter setting forth the applicability of the navigation laws to a vessel will be applied only with respect to ***transactions*** involving operations ***identical to*** those set forth in the ruling letter." (emphases added)). Plaintiffs therefore cannot claim any alleged harms even indirectly traceable to CBP and redressable by vacatur of its rulings—whether through the thirty letter rulings themselves or through the 2017

Notice or 2019 Decision.  Plaintiffs' attempt at specificity in the Amended Complaint merely adds some color to their generalized market complaints.

The contrast between this case and *Horizon Lines, LLC v. United States*—on which Plaintiffs hang their hat—further demonstrates the intractable standing defects in Plaintiffs' claims.  *See* Opp'n 24.  In *Horizon*, the plaintiff intervened in a particular CBP proceeding to challenge a specific letter ruling.  This ruling allowed a competitor to transport frozen fish from Alaska to Massachusetts via New Brunswick.  414 F. Supp. 2d 46, 49 (D.D.C. 2006).  The *Horizon* plaintiff competed for the specific business at issue in the letter ruling.  *Id.*  Indeed, the court distinguished the *Horizon* plaintiff from the trade association plaintiff in *Shipbuilders Council of America v. United States* on that very basis.  *Id.* 43 (citing 868 F.2d 452 (D.C. Cir. 1989)).  The court noted that the *Shipbuilders* plaintiff, "a trade association[,] . . . was not party to [CBP's] original ruling" and that "the complaint was not based on any agency action adverse to plaintiff." *Id.* (citing *Shipbuilders*, 868 F.2d at 455–56).

Here, Plaintiffs do not allege that they or their members were party to administrative proceedings for any of the thirty challenged letter rulings.[2]  Am. Compl ¶¶ 70–144.  Instead, they allege only that Plaintiff OMSA later commented on subsequent notices from CBP and that their members were "passed over" in unrelated transactions—transactions that Plaintiffs make no effort to show were "identical."  *Id.* ¶¶ 37, 52, 63, 145–72; Opp'n 29.  Plaintiffs in this case do not

---

[2] Plaintiffs note that they "raised the letter rulings at issue in Count 2 in a 2016 request for a letter ruling" that CBP denied.  Opp'n 41 (citing Am. Compl. ¶¶ 193–94).  Oddly, Plaintiffs do not appeal CBP's denial of their 2016 request in any of their five claims here.  *See* Am. Compl. ¶¶ 186–209.

resemble the *Horizon* plaintiff—they instead resemble the *Shipbuilders* plaintiff that the *Horizon* court distinguished.[3]

The distinction between the *Horizon* plaintiff and Plaintiffs here confirms that key elements of Plaintiffs' standing are missing. Plaintiffs' failure to show identical transactions means they do not show that any alleged competitive harms suffered by their members are fairly traceable to these CBP rulings. Plaintiffs tellingly do not allege that they sought or that CBP issued a letter ruling governing any of the specific instances of competitive harm they identify. Am. Compl ¶¶ 70–144. The fact that Plaintiffs' members "observed" foreign-flag activity or were "passed over" by third parties cannot be fairly traced to the particular CBP letter rulings at issue. Relatedly, vacating the challenged letter rulings—either by vacating the rulings themselves or vacating the 2019 Decision which did not revoke them—would not redress Plaintiffs' alleged injuries. Plaintiffs do not allege that they or any of their members were a party to any of the thirty challenged letter rulings. *Id.* And they do not allege that any of the thirty challenged letter rulings governed "identical" transactions in which Plaintiffs' members were "harmed." *Id.* ¶¶ 145–72. Vacating the challenged letter rulings would not change Plaintiffs' current situation in any way.

*Kloosterboer*, cited by Plaintiffs, also offers a helpful distinction between this case and particularized competitive injuries. *Kloosterboer Int'l Forwarding LLC v. United States*, 604 F. Supp. 3d 853 (D. Alaska 2022). In *Kloosterboer*, CBP penalized the plaintiff for using foreign-flag vessels to transport frozen fish from Alaska to Canada and thereon to Maine, without complying with an applicable exception to the Jones Act. *Id.* 859–60. The plaintiff sued CBP to enjoin its enforcement action. *Id.* In opposing the injunction, CBP noted—using language quoted

---

[3] Indeed, one of the Plaintiffs here, Shipbuilders Council of America, was the plaintiff in *Shipbuilders*.

by Plaintiffs here—that an injunction would not be in the public interest.  CBP said that the plaintiff's unlawful use of non-coastwise qualified ships "harmed several U.S.-based shipping companies" and reduced "investment" in "other U.S. industries, such as the rail and trucking industries."  U.S. Opp'n to Pls.' Mot. for TRO at 41, *Kloosterboer Int'l Forwarding LLC v. United States*, No. 3:21-cv-00198-SLG, 2021 WL 5028308 (D. Alaska Sept. 20, 2021), ECF No. 38.

Thus, unlike Plaintiffs here, CBP in *Kloosterboer* described specific competitive harms in the context of a specific CBP proceeding and tied the harms directly to a particular transaction: the plaintiff's unlawful use of foreign-flag ships in the transportation of frozen fish between specified points when the record indicated that qualified U.S.-flag vessels were available for the exact movements of frozen fish at issue.  *See id.*  Here, Plaintiffs allege harms in transactions unconnected to the challenged CBP letter rulings, and they do not allege any specific transactions authorized by the challenged letter rulings.  Am. Compl. ¶¶ 145–72.  Plaintiffs merely allege general competitive and market harms unconnected to any particular CBP enforcement action.  *Id.*

It is also worth noting that CBP raised the competitive and market harms in *Kloosterboer* as part of a public-interest analysis when opposing an injunction.  Thus, CBP was presenting that evidence for the court's general consideration of equity.  CBP did not claim that those competitive harms were concrete and particularized harms sufficient to confer standing on the affected third parties.  U.S. Opp'n at 41, *Kloosterboer*, 2021 WL 5028308.

In short, Plaintiffs have failed to allege an injury that is actual and imminent, concrete and particularized, fairly traceable to the CBP letter rulings at issue, and redressable by their vacatur by this Court.  *See* Mot. 17–25.  They do not have standing.

### C. Plaintiffs' claims are not ripe because they have not sought a CBP letter ruling on transactions involving their members.

For essentially the same reasons that Plaintiffs fail to allege an Article III injury, they also fail to present ripe claims or claims cognizable under the APA.  *See supra* Part I.B; *see also* Mot. 25–31.  Plaintiffs have skipped a critical step in the administrative process: asking CBP for a letter ruling on a particular transaction.  Plaintiffs instead came straight to the Court seeking an advisory opinion to constrain CBP in future letter rulings.

Ripeness is particularly important in this context.  As explained above, CBP carrier letter rulings govern only "identical transactions."  *See supra* Part I.A.  The fact-intensive nature of each potential Jones Act dispute heightens the need to reduce "the scope of the controversy . . . to more manageable proportions" and to "flesh out[]" "its factual components."  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  CBP regularly receives ruling requests from parties with substantially similar facts because vessel owners understand, unlike Plaintiffs, that rulings apply only to "identical transactions."[4]  Plaintiffs misunderstand the nature and effect of CBP letter rulings when they assert that "[t]he issues here involve a purely legal question with no need for any further factual development or additional agency action."  Opp'n 34.  Each CBP letter ruling depends on the facts particular to the transaction—as do any potential effects each letter ruling may have on other particular identical transactions.  By abstracting "a purely legal question" from a series of letter rulings, Plaintiffs have cut out the actual case or controversy.  Article III does not allow that.

---

[4] Compare, e.g., CBP HQ H329630 (Mar. 9, 2023), CBP HQ H318628 (Jun. 30, 2022), and CBP HQ H321256 (Nov. 2, 2021), all of which deal with similar—but not identical—cable lay and burial operations.

**II.    The applicable statute of limitations runs from the time a cause of action *first* accrues—it does not toll for alleged continuing harms as Plaintiffs suggest.  The statute of limitations therefore also bars the bulk of Plaintiffs' claims.**

Plaintiffs ask the Court to ignore the six-year statute of limitations governing their claims. Section 2401(a) of Title 28 plainly says that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).  Plaintiffs filed their original complaint on November 9, 2017.  The statute of limitations thus bars any of Plaintiffs' claims that accrued before November 9, 2011. Twenty-seven of the thirty challenged letter rulings were issued before November 9, 2011.  The statute of limitations thus bars Plaintiffs' challenge to every letter ruling except HQ H205655 (Mar. 20, 2012), HQ H225102 (Sept. 24, 2012), and HQ H235242 (Nov. 15, 2012).[5]

Plaintiffs nevertheless ask the Court to ignore the plain language of § 2401(a).  Plaintiff asserts that an agency's "rules and regulations are capable of continuing application."  Opp'n 38 (quoting *Murphy Expl. & Prod. Co. v. Dep't of Interior*, 270 F.3d 957, 857–59 (D.C. Cir. 2001)). There are two problems with this theory.  *First*, Plaintiffs do not challenge a "rule" or "regulation" of CBP—they challenge CBP's transaction-specific applications of its rules and regulations in specific letter rulings.  *Second*, § 2401(a) plainly states that the limitations period runs from the time "the right of action *first* accrues."  28 U.S.C. § 2401(a) (emphasis added).

Plaintiffs wrongly rely on caselaw presenting as-applied challenges to statutes or regulations in subsequent enforcement proceedings to circumvent the phrase "first accrues."  For example, Plaintiffs cite to *NLRB Union*.  But they omit the key phrase: "A challenge of this sort

---

[5] Of course, Plaintiffs do not challenge the latter two letter rulings themselves but instead the 2019 Decision's recission of them.  The point, however, remains the same—only these three letter rulings fall within the applicable statute of limitations.  And regardless Plaintiffs cannot show any actual, imminent, concrete, or particularized harm from the 2019 Decision.

might be raised, for example, by way of defense in an enforcement proceeding." *Compare NLRB Union v. Fed. Labor Rels. Auth.*, 834 F.2d 191, 195 (D.C. Cir. 1987), *with* Opp'n 38–39.  Here, Plaintiffs have not challenged CBP's past letter rulings in a particular enforcement proceeding or identical action.  Again, Plaintiffs were not parties to these letter-ruling requests.  Instead, they bring freestanding claims affirmatively attacking the letter rulings separate from other particular transactions.  Tolling the statute of limitations for all agency actions that have an "ongoing" effect would write the phrase "first accrues" out of the statute entirely.  Indeed, it would effectively repeal the statute of limitations itself.

Plaintiffs also state that "Defendants' statute-of-limitations argument ignores the fact that CBP's § 1625 reconsiderations have repeatedly addressed—within the six-year limitations period—the issues covered in these letter rulings, and even, in several instances, the very same letter rulings themselves."  Opp'n 40.  Here Plaintiffs repeat the error highlighted above: CBP's letter rulings address particular "transactions" not "issues."  *See supra* Part I.A (citing 19 U.S.C. § 1625(c)(2); 19 C.F.R. § 177.1, 177.9, 177.12).  Plaintiffs' statement that CBP revisited "the issues covered in these letter rulings" simply misstates the function of letter rulings.  Regardless, even if CBP revisited "issues" or "in several instances, the very same letter ruling themselves," the statute-of-limitations clock would not restart.  The tolling principle quoted by Plaintiffs "applie[s] to rules and regulations," not every type of agency action as Plaintiffs suggest. *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546 (D.C. Cir. 1958); *but see* Opp'n 40.  Plaintiffs challenge CBP letter rulings, *not* CBP rules or regulations.  Plaintiffs' attempt to lodge a challenge to stale letter rulings in the 2019 Decision lacks any foundation in law.

Plaintiffs also did not substantively respond to Defendants' explanation that challenges to letter rulings of purely historical interest are moot.  *Compare* Opp'n 42–43, *with* Mot. 34.  Instead,

they merely observe that the letter rulings are unrevoked.  They do not even attempt to address the

clear holding from *Shipbuilders* that disputes over letter rulings can become moot—"precedential

effect aside"—when they have "become a matter of purely historical interest, with no present real-

world consequences."  868 F.2d at 456.  Plaintiffs' failure to develop any response to this point

forfeits their opposition to it.  *Arnoldi v. Bd. of Trustees, Nat'l Gallery of Art*, 557 F. Supp. 3d 105,

119 (D.D.C. 2021), *aff'd*, No. 21-5182, 2022 WL 625721 (D.C. Cir. Mar. 1, 2022) (holding that

plaintiff forfeited a theory of liability by failing to address it); *see also Justice v. Koskinen*, 672 F.

App'x 6 (D.C. Cir. 2016) ("[A]ppellant has waived the mootness argument by failing to develop

in his brief."); *Xenophan Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC*, 268 F. Supp.

3d 61, 72 (D.D.C. 2017); *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d

174, 178 (D.D.C. 2001).

Whether on statute-of-limitations grounds or mootness grounds, the Court should dismiss

Plaintiffs' untimely challenge to the old letter rulings.

### III.    It would be futile to permit Plaintiffs to amend their Complaint yet again.

The Court should not grant Plaintiffs leave to amend their Complaint again.  Doing so

would only unjustly delay resolution of this case.  Five years and a day ago, Defendants initially

moved for judgment on the pleadings on jurisdictional grounds highlighting essential defects in

Plaintiffs' theory of the case.  ECF No. 18-1.  Defendants have still not cured those essential

jurisdictional defects despite opportunity (and their attempt) to do so.

Contrary to their assertion, Opp'n 44, Plaintiffs' amendments did not merely address the

intervening 2019 Decision.  In fact, Plaintiffs alleged jurisdictional facts that could have been

alleged before.  The Amended Complaint added 105 new paragraphs and amended dozens of

existing paragraphs.  Of the new and amended paragraphs, 124 allege jurisdictional facts unrelated

to the 2019 Decision, including Plaintiffs' understanding of the Jones Act, Am. Compl. ¶¶ 21–25,

the alleged binding effect of CBP's letter rulings, *id.* ¶¶ 2–7, 30–40, 49–51, 54–60, Plaintiffs'

theory of reliance and competitive harm, *id.* ¶¶ 41–48, 145–63, 169–75, 182, 185, and Plaintiffs'

characterization of the letter rulings at issue, *id.* ¶¶ 70–83, 94–98, 103–05, 122–32, 136–44.  The

bulk of the new material thus alleges jurisdictional facts that could and should have been alleged

in Plaintiffs' Original Complaint.  And those new jurisdictional allegations directly respond to the

standing, ripeness, mootness, and general justiciability arguments that Defendants raised in their

original motion for judgment on the pleadings.  *See* Dt. No. 18-1 at 9–21.  Further amendment

would indeed be a "third bite at the apple."

As emphasized by this Court in *White*—relied on by Plaintiffs—the Court can and should

deny leave to amend because of "undue delay, . . . repeated failure to cure deficiencies in a

pleading, undue prejudice to the opposition party, and futility of amendment."  *White v. Wash.*

*Metro. Area Transit Auth.*, 303 F. Supp. 3d 5, 8 (D.D.C. 2018).  This Court routinely denies leave

to amend when further amendment would be futile or would cause undue delay to the prejudice of

the defendant.  *See, e.g.*, *Mwani v. Al Qaeda*, 600 F. Supp. 3d 36, 49–50 (D.D.C. 2022).  Prejudice

includes not only the litigation costs imposed on the Defendants but also the unnecessary

"expenditure of additional resources by the Court."  *Id.* (quoting *Hallissey v. Am. Online, Inc.*,

No. Civ. A. No. 99-3785, 2009 WL 2222739, at *2–3 (S.D.N.Y. July 15, 2009)).

As demonstrated above, Plaintiffs have not cured the jurisdictional defect at the heart of

their claims.  Plaintiffs ask for an advisory opinion rather than a resolution of any particular case

or controversy.  Plaintiffs could salvage their claims only by fundamentally changing them—a

radical change in the scope of the case that cannot be effected through amendment of a complaint.

*Miss. Ass'n of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991).

Amending the complaint once again would therefore be futile.  Moreover, further amendment

would unduly prolong this case, which has been pending for five and a half years already.  Further litigation expenses would prejudice the Defendants and waste the Court's resources.  *See id.*; *see also Mwani*, 600 F. Supp. 3d at 50.  The Court should dismiss without granting leave to amend.

<u>**CONCLUSION**</u>

For the reasons set forth above and in Defendants' Memorandum in Support of Defendants' Motion for Judgment on the Pleadings, the Court should dismiss Plaintiffs' First Amended Complaint without granting leave to amend.

May 22, 2023

MATTHEW M. GRAVES
(D.C. Bar No. 481052)
United States Attorney
BRIAN P. HUDAK
Chief, Civil Division

By: /s/ *Brenda A. Gonzalez Horowitz*
BRENDA A. GONZALEZ HOROWITZ
Assistant United States Attorney
U.S. Attorney's Office, Civil Division
601 D Street N.W.
Washington, D.C. 20530
Tel.: (202) 252-2512
Brenda.Gonzalez.Horowitz@usdoj.gov

*Counsel for United States Customs and*
*Border Protection and Troy Miller*

Respectfully submitted,

/s/ *Jonathan D. Brightbill*
JONATHAN D. BRIGHTBILL
(D.C. BAR NO. 483956)
CONSTANTINE G. PAPAVIZAS
(D.C. BAR NO. 388403)
Winston & Strawn LLP
1901 L Street N.W.
Washington, D.C. 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
jbrightbill@winston.com
cpapavizas@winston.com

MICHAEL J. WOODRUM
(Tex. Bar No. 24121899)
*Admitted Pro Hac Vice*
Winston & Strawn LLP
2121 North Pearl Street, Suite 900
Dallas, TX 75214
Tel.: (214) 453-6500
Fax: (214) 453-6400
mwoodrum@winston.com

*Counsel for Intervenor–Defendant API*